OPINION
Defendant-appellant Donna Overholser appeals from her conviction and sentence, following a no contest plea, for Involuntary Manslaughter. Overholser contends that the trial court erred by denying her motion to suppress evidence and statements obtained from her following her arrest. She contends that the evidence or statements were unlawfully obtained, because her consent to provide them was obtained by means of a deliberately deceptive withholding of the information that the motor vehicle collision in which she was involved had caused the death of another.
Although we agree with Overholser that her consent was obtained by means of a deliberately deceptive withholding of that information, we conclude that that fact did not vitiate her consent to providing the evidence and waiving her rights underMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 6994. Accordingly, the judgment of the trial court is Affirmed.
 I
At about 10:00 one night in October, 1998, Overholser pulled out of a driveway immediately into the path of a motorcycle being driven by Barton Adkins. Overholser failed to yield the right of way to Adkins. As the result of Overholser's failure to yield the right of way, Adkins' motorcycle collided with Overholser's car. Adkins was pronounced dead at the scene.
At least two police officers, Lisa Wion and Dave Duchak, contacted Overholser at the scene. They quickly formed an impression that Overholser was under the influence of alcohol. The officers knew that Adkins had been killed in the accident.
After ascertaining that Overholser was not injured, they arrested her, advising her that she was being arrested for Driving Under the Influence. They took her to the county sheriff's office and advised her of her Miranda rights. They also read her Ohio's implied consent form, and requested that she submit to a breathalyzer test to determine her blood alcohol level. Overholser informed the officers that she would not cooperate in any manner until she had spoken with her attorney, Paul Princi.
The officers made several unsuccessful attempts to contact Mr. Princi. They then suggested to Overholser that she contact attorney Stephen King, Mr. Princi's partner. In the presence of the officers, Overholser spoke with King over the telephone. The officers were able to hear her end of the conversation. They both recall having heard her inform King that she was under arrest for DUI.
Following her conversation with King, Overholser expressed a willingness to cooperate fully with their requests. She submitted to a breathalyzer test, she submitted a urine sample, she performed a series of field sobriety tests, and she made a statement to the officers.
Thereafter, the officers advised Overholser, for the first time, that her accident had caused the death of another. Based upon Overholser's reaction to this news, they concluded that Overholser had just realized that her accident had resulted in a fatality.
Although Duchak testified that he had assumed that Overholser saw Adkins' body covered by a sheet at the scene, he acknowledged that he did not want Overholser's attorney to know that the accident had caused a fatality "because I'm sure he probably would have told her at that point not to cooperate and to not take the tests." Duchak also gave the following testimony:
 Q. Yeah, based on your experience that someone knows that they killed someone in an accident and they're talking to their lawyer, based on your experience they're gonna tell their lawyer that, correct?
[colloquy omitted]
A. I would think so.
Overholser was charged with Aggravated Vehicular Homicide and Involuntary Manslaughter. She filed a motion to suppress. Following the denial of her motion to suppress, she pled no contest to Involuntary Manslaughter, and the Aggravated Vehicular Homicide charge was dismissed. Overholser was found guilty of Involuntary Manslaughter, and sentenced appropriately. From her conviction and sentence, Overholser appeals.
 II
Overholser's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS/MOTION IN LIMINE.
Overholser predicates her assignment of error upon the fact that her consent to submit to the field sobriety testing and to provide the urine and breath samples, as well as her waiver of her right not to submit to custodial interrogation in the absence of her lawyer, was obtained as the result of deceptive conduct on the part of the officers. Specifically, she contends that the officers deliberately withheld from her the information that someone had been killed in the accident in which she was involved.
The mere failure to advise a suspect of the scope of a criminal investigation has been held not to vitiate a Miranda
waiver, because "a valid waiver does not require that an individual be informed of all information `useful' in making his decision where all information `might . . . affect [his decision to confess].'" Colorado v. Spring (1987), 479 U.S. 564, 576,107 S.Ct. 851, 93 L.Ed.2d 954. See State v. Hetzel (July 12, 1996), Mont. App. No. 14411, unreported.
In Colorado v. Spring, supra, the defendant was questioned by agents of the Bureau of Alcohol, Tobacco, and Firearms concerning certain firearms transactions that led to his arrest, but was also asked a question about the shooting of a man named Walker in Colorado. Arguably, the fact that the scope of the custodial interrogation was going to include a suspicion of murder would have been of considerable significance to the defendant in that case when he contemplated whether to waive his Miranda rights. Nevertheless, the United States Supreme Court held that the agents were not obliged to provide him with that information when they solicited his waiver.
Similarly, in the case before us, the officers having custody of Overholser were not obliged to inform her that they were investigating her culpability in a homicide when they solicited her Miranda waiver. Consequently, their failure to divulge that information, even though it appears to have been deliberately calculated to increase the likelihood of obtaining Overholser's waiver, does not vitiate that wavier.
In Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854, the United States Supreme Court employed that body of jurisprudence that had evolved dealing with the issue of the voluntariness of a waiver of Miranda rights, in its determination of the validity of a consent to a search. Admittedly, the issue in Schneckloth involved whether the consent to search was vitiated by coercive tactics, as opposed to a deliberate failure to provide the suspect with facts to inform his choice whether to consent. However, Schneckloth is significant in that it indicates a willingness to use the same analysis of consent in Fourth Amendment cases that has been applied in cases involving Miranda rights under the Fifth and Sixth Amendments.
For a good analysis of the use of deception by police to obtain a consent to search, see William R. LaFave, 3 Search andSeizure, 3rd Edition, West Publishing Co., (1996) § 8.2(n), at 706 — 713. As LaFave notes, the most difficult cases are those in which consent is obtained by means of misrepresenting the scope of the search. In the case before us, however, the scope of the search was not misrepresented. It was clear that all of the tests to which Overholser consented were intended to, and did, concern whether she was under the influence of alcohol. The omitted fact concerned the degree of criminal culpability to which Overholser might be exposed as a consequence. Although this may well have affected her rational calculus whether to consent to the search, it appears from Schneckloth v. Bustamonte, supra, that the police are not obliged to provide information merely because that information may have a bearing upon the wisdom of a suspect's decision whether to waive a constitutional right.
There is a line of cases, cited by LaFave at page 95 of the 2000 pocket part, exemplified by United States v. Tweel (5th Cir., 1977), 550 F.2d 297, in which federal circuit courts of appeals have held that the failure to advise a suspect of the scope of an investigation vitiates a consent to search for Fourth Amendment purposes. It is noteworthy, however, that all of those cases involve the Internal Revenue Service. The explanation for this line of cases may lie in the following statement in Tweel, supra:
 Our revenue system is based on the good faith of the taxpayers and the taxpayers should be able to expect the same from the government in its enforcement and correction activities.
In the case before us, of course, Overholser knew that her cooperation was with sheriff's deputies, not internal revenue agents.
Although the issue is not free from difficulty, we conclude that the failure of police officers to advise a suspect of the scope of a criminal investigation does not vitiate the suspect's consent to search, even when that failure is deliberately calculated to enhance the likelihood that consent will be given. Overholser's sole assignment of error is overruled.
 III
Overholser's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.